Approved: _____
         MATTHEW WEINBERG
         Assistant United States Attorney

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York             **22 MAG 1638**

- - - - - - - - - - - - - - - - - x
                                  :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :   Violation of
          - v. -                  :   18 U.S.C. §§ 1341
                                  :   1343, 1028A, and 2
VITALY BORKER,                    :
                                  :   COUNTY OF OFFENSE:
               Defendant.         :   NEW YORK
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

  Daniel J. Gabel, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

### COUNT ONE
(Mail Fraud)

  1.  From at least in or about June 2020, up to and including the present, in the Southern District of New York and elsewhere, VITALY BORKER, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were

1

addressed, such matters and things, to wit, BORKER defrauded customers of his retail eyewear website, EyeglassesDepot.com, by, among other things, misrepresenting the authenticity and condition of merchandise he sold and mailed to such customers.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO
(Wire Fraud)

2. From at least in or about June 2020, up to and including the present, in the Southern District of New York and elsewhere, VITALY BORKER, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, BORKER defrauded customers of his retail eyewear website, EyeglassesDepot.com, by, among other things, making misrepresentations via email and telephone concerning the authenticity and condition of merchandise he offered for sale and sold to customers.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
(Aggravated Identity Theft)

3. From at least in or about June 2020, up to and including the present, in the Southern District of New York and elsewhere, VITALY BORKER, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, BORKER used and transferred the names of two other persons ("Individual-1" and "Individual-2") during and in relation to mail and wire fraud violations charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Postal Inspector with the USPIS. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with customers of EyeglassesDepot.com, other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

## OVERVIEW OF SCHEME INVOLVING EYEGLASSESDEPOT.COM

5. EyeglassesDepot.com is a website engaged in the business of eyewear sales and repair services. The EyeglassesDepot.com homepage claims, among other things, that the website is the "planet's biggest online website for designer discount sunglasses and eyeglasses," "the top rated leader in the repair of sunglasses and eyeglasses," and "can fit any eyeglasses or sunglasses with your custom prescriptions."

6. More specifically, EyeglassesDepot.com claims, among other things, that it sells "brand new and 100% authentic designer eyeglasses and sunglasses," that it "pride[s] [itself] in carrying current styles as well as old discontinued styles," and that it has "thousands of pairs of glasses in stock," "order[s] merchandise from the manufacturer," and "carr[ies] and stock[s] thousands of glasses ready for shipping as early as TODAY."

7. As described in further detail below, these statements are false. In truth and fact, the eyewear sold to customers of EyeglassesDepot.com is often used and/or counterfeit. EyeglassesDepot.com does not carry a large inventory of "brand new and 100% authentic" eyewear; instead, after an order for eyewear is placed on EyeglassesDepot.com, the website seeks to fill the order by purchasing a comparable item on a particular online marketplace of goods ("Online Marketplace-1") or through some other source. In many cases, the eyewear purchased on Online Marketplace-1 is used and/or counterfeit, but passed off to the customer of EyeglassesDepot.com as new and authentic.

3

8. In addition, customers who sent eyewear to EyeglassesDepot.com for repair and/or prescription services often did not have their eyewear repaired at all or otherwise received unsatisfactory work.

9. VITALY BORKER, the defendant, operates and manages EyeglassesDepot.com. BORKER has twice previously been convicted in this District of crimes relating to his operation of websites engaged in the business of eyewear sales and repair services, specifically, DecorMyEyes.com and OpticsFast.com.

10. In order to conceal his role in operating EyeglassesDepot.com, VITALY BORKER, the defendant, has assumed the identities of Individual-1 and Individual-2. In particular, BORKER claims that Individual-1 is the owner of a particular corporation ("Corporation-1") which, in turn, BORKER claims owns EyeglassesDepot.com. And BORKER purchases eyewear on Online Marketplace-1 by using an account held in the name of Individual-2 (the "Individual-2 Account").

EYEGLASSESDEPOT.COM DEFRAUDS CUSTOMERS

11. Based on my review of the website EyeglassesDepot.com, I know that it contains the following statements:

    a. It sells "brand new and 100% authentic" designer eyeglasses and sunglasses.

    b. "All merchandise comes with the designer eyewear case, authenticity card and dust cloth where appropriate."

    c. It "carries over one hundred fifty different luxury discount designer brands of sunglasses" and "eyeglasses," and it "pride[s] [itself] in carrying current styles as well as old discontinued styles."

    d. It has "thousands of pairs of glasses in stock," "order[s] merchandise from the manufacturer," and "carr[ies] and stock[s] thousands of glasses ready for shipping as early as TODAY."

12. Based on my review of the email account ("Email Account-1") to which orders placed on EyeglassesDepot.com are sent, and my review of records from Online Marketplace-1, I know that these statements are fraudulent. Specifically, I know that, after an order is placed on EyeglassesDepot.com, the

website will often seek to fill the order by purchasing eyewear on Online Marketplace-1. The account used by EyeglassesDepot.com to purchase eyewear on Online Marketplace-1 is the Individual-2 Account – that is, the account held in the name of Individual-2 – but, as set forth below, is operated and controlled by VITALY BORKER, the defendant.

13. Based on my and another Postal Inspector's conversations with customers of EyeglassesDepot.com and my review of complaints posted online by customers of the website, I know that customers who ordered eyeglasses on EyeglassesDepot.com often received eyeglasses that were used and/or counterfeit. In addition, I know that customers who sent eyewear to EyeglassesDepot.com for repair and/or prescription services often did not have their eyewear repaired at all and/or otherwise received unsatisfactory work. Furthermore, after a customer requests a price quote for repair or other services by EyeglassesDepot.com, but before the customer has in fact agreed to utilize EyeglassesDepot.com's services, the website will order a pre-paid shipping label for the prospective customer to ship the eyewear to EyeglassesDepot.com. If the customer ultimately decides not to use the website's services, EyeglassesDepot.com will attempt to charge the prospective customer a $9.99 "repair cancellation fee." On several occasions, after a customer refused to pay the $9.99, EyeglassesDepot.com sent numerous emails and text messages harassing the prospective customer for payment and threatening to send the customer's information to a debt collector.

*Victim-1*

14. In the course of this investigation, I have reviewed tens of thousands of emails and text messages obtained pursuant to a search warrant for certain email accounts and Internet-serviced phone numbers that were used by EyeglassesDepot.com and VITALY BORKER, the defendant (collectively, the Search Warrant Returns).[1] Based on my review of the Search Warrant Returns and records from Online Marketplace-1, as well as my communications with a customer of EyeglassesDepot.com ("Victim-1"), I know the following:

---

[1] The Search Warrant Returns contained data from four user accounts held with a provider of internet services. Each of these user accounts were assigned an email address, and at least two of them were also assigned Internet-serviced phone numbers.

5

a. Victim-1 is a resident of Manhattan who was physically present in the district during all relevant events described herein.

b. On or about May 5, 2021, Victim-1 exchanged text messages with a phone number that was used by EyeglassesDepot.com to communicate with customers (the "Phone Number").[2] Specifically, Victim-1 exchanged text messages regarding eyeglasses that Victim-1 was interested in purchasing from EyeglassesDepot.com. After further text message and telephone communications, Victim-1 ordered eyeglasses from EyeglassesDepot.com on or about May 11, 2021. Victim-1's credit card was charged $521.91 for the purchase.

c. On or about May 11, 2021, that is, the date that Victim-1 placed an order on EyeglassesDepot.com, an order was made by the Individual-2 Account to purchase eyewear that was similar in description to the eyeglasses ordered by Victim-1. The order on Online Marketplace-1 was placed from an internet protocol ("IP") address (the "Borker IP") associated with VITALY BORKER's, the defendant's, residence in Brooklyn.[3] The product description posted on Online Marketplace-1 for these eyeglasses indicated that the eyeglasses were being purchased from a seller based in Chico, California. The Individual-2 Account paid $134.00 for the eyeglasses.

d. On or about May 25, 2021, Victim-1 called EyeglassesDepot.com numerous times without making contact. Victim-1 then sent a text message asking for an update on the status of Victim-1's order. EyeglassesDepot.com responded by text, informing Victim-1 that the estimated delivery dates were

---

[2] Unless otherwise stated, all text messages and/or telephonic communications with EyeglassesDepot.com described herein were exchanged with the Phone Number. The Phone Number is an Internet-serviced phone number, and text message and call information for the Phone Number was received as part of the Search Warrant Returns.

[3] I know BORKER's residential address because it is the physical location where he was arrested by United States Postal Inspectors in 2010 and 2017. In addition, it is the address that BORKER has on file with the United States Probation Office in connection with his ongoing term of supervised release. I know the IP address is associated with BORKER's residence based on my review of records from a provider of internet services.

6

May 15 to May 19, 2021, and that the eyeglasses were "coming from Italy as they are discontin[u]ed in USA."

  e. Victim-1 noted that the estimated delivery dates – that is, May 15 to May 19 – had already passed and asked how much longer it would be before receiving the eyeglasses. EyeglassesDepot.com responded that it was seeking additional information from the vendor. EyeglassesDepot.com then notified Victim-1 that the item appeared to be in Chico, California and that "this is weird" because it "arrived from Italy and was to be shipped from them to me."

  f. The above statement was untrue, as the records from Online Marketplace-1 indicated at the time of purchase that the eyeglasses were being purchased from a seller located in California.

  g. On or about May 25, 2021, that is, the day after Victim-1 contacted EyeglassesDepot.com to inquire about the order, the Individual-2 Account cancelled the order for eyeglasses that had been placed through Online Marketplace-1 on or about May 11, 2021. That same day, on or about May 25, 2021, the Individual-2 Account placed another order on Online Marketplace-1 for eyewear that was similar in description to the eyeglasses ordered by Victim-1 on EyeglassesDepot.com. The order was placed from the Borker IP. The product description for the eyeglasses on Online Marketplace-1 indicated that they were being purchased from a seller based in Texas. The description also said that the eyeglasses were used. The Individual-2 Account paid $129.99 for the eyeglasses.

  h. On or about May 27, 2021, Victim-1 sent a text message to EyeglassesDepot.com seeking information about when the eyeglasses would arrive. EyeglassesDepot.com replied that it had reordered the item because the first order "was not clearly happening," and that the glasses would be received in "a few days."

  i. Between on or about June 1, 2021 and on or about June 4, 2021, Victim-1 attempted to reach EyeglassesDepot.com by phone on numerous occasions. Eventually, on or about June 4, 2021, Victim-1 sent a text message to EyeglassesDepot.com asking for the status of Victim-1's order. Victim-1 did not receive a response. On or about June 5, 2021 and June 9, 2021, Victim-1 again attempted to reach EyeglassesDepot.com by phone. On or about June 9, 2021, Victim-1 again sent a text message to EyeglassesDepot.com asking for an update on Victim-1's order.

7

EyeglassesDepot.com responded that it was waiting for the lenses, which were custom-ordered, and that once the lenses were received it would ship the product to Victim-1. Victim-1 responded to ask how much longer it would be, noting that the original quote for delivery had been seven to ten business days.

        j.    On or about June 16, 2021, Victim-1 requested a refund. Later that day, EyeglassesDepot.com responded "Its been shipped FINNALLY" [sic].

        k.    At some point after June 16, 2021, the eyeglasses were delivered to Victim-1's home. Upon receiving the eyeglasses, Victim-1 observed that they did not appear to be authentic eyewear from the purported designer.

        l.    After receiving the eyeglasses, Victim-1 attempted to contact EyeglassesDepot.com by phone in order to request a refund. Victim-1 did not receive a response from EyeglassesDepot.com. Nor did Victim-1 receive a refund.

*Victim-2*

15.    Based on my review of the Search Warrant Returns and records from Online Marketplace-1, as well as my communications with a customer of EyeglassesDepot.com ("Victim-2"), I know the following:

        a.    Victim-2 resided in Manhattan during all relevant events described herein.

        b.    On or about October 19, 2020, Victim-2 ordered a pair of designer eyeglasses from EyeglassesDepot.com. Victim-2 was charged $197.94 for the eyeglasses.

        c.    On or about October 20, 2020, that is, the day after Victim-2 placed an order on EyeglassesDepot.com, the Individual-2 Account placed an order to purchase eyeglasses on Online Marketplace-1 that were similar in description to the eyeglasses ordered by Victim-2 on EyeglassesDepot.com. The order was placed from the Borker IP, and the shipping address provided to Online Marketplace-1 was BORKER's residence. The product description on Online Marketplace-1 indicated that the eyeglasses were used. The Individual-2 Account paid $79.99 for the eyeglasses.

16.    Based on my review of records from a shipping logistics company, I know that, on or about October 26, 2020,

EyeglassesDepot.com purchased a shipping label for purposes of sending a mailing to Victim-2's residence in Manhattan.

17. Based on my communications with Victim-2, I know the following:

    a. Sometime after October 26, 2020, Victim-2 received the eyeglasses by mail to Victim-2's residence in Manhattan.

    b. After receiving the eyeglasses, Victim-2 observed that they did not appear to be authentic eyeglasses from the designer. Victim-2 requested and received a refund.

18. Based on my review of the Search Warrant Returns, I know that Victim-2 received a refund of $143.99 – that is, $53.95 less than the total amount paid for the eyeglasses by Victim-2.

*Victim-3*

19. Based on my review of emails exchanged between EyeglassesDepot.com and another individual ("Victim-3"), I know that, between on or about September 26, 2020 and on or about September 29, 2020, Victim-3 exchanged emails with EyeglassesDepot.com about ordering a pair of designer eyeglasses. EyeglassesDepot.com told Victim-3 that it had a "display model" of the eyeglasses available.

20. Based on my review of the Search Warrant Returns, I know that, on or about September 29, 2020, Victim-3 placed an order on EyeglassesDepot.com. Victim-3 was charged $139.99 for the eyeglasses.

21. Based on my review of records from Online Marketplace-1, I know the following:

    a. On or about September 29, 2020, that is, the same day Victim-3 placed an order on EyeglassesDepot.com, the Individual-2 Account placed an order to purchase eyeglasses on Online Marketplace-1 that were similar in description to the eyeglasses ordered by Victim-3 on EyeglassesDepot.com. The order was placed from the Borker IP. The product description on Online Marketplace-1 indicated that the eyeglasses were used. The Individual-2 Account paid 79.00 Canadian dollars for the eyeglasses, which converted to approximately $58.99.

9

b. The order placed by the Individual-2 Account on Online Marketplace-1 requested that the eyeglasses be shipped to Victim-3's home address.

22. Based on my review of online complaints and my and other Postal Inspectors' conversations with over 20 customers of EyeglassesDepot.com, I know that customers of EyeglassesDepot.com have repeatedly made complaints about the website that are consistent with the experiences of Victim-1, Victim-2 and Victim-3. In addition, based on my review of records from Online Marketplace-1, I know that, between in or about June 2020 and in or about November 2021, the Individual-2 purchased over 1,000 eyeglasses that were advertised on Online Marketplace-1 as "used."

<u>VITALY BORKER OPERATES EYEGLASSESDEPOT.COM</u>

*Similarities Between EyeglassesDepot.com, OpticsFast.com, and DecorMyEyes.com*

23. Based on my review of publicly available court records, I know the following:

a. On or about December 16, 2010, VITALY BORKER, the defendant, was charged with mail and wire fraud, cyberstalking, and making threatening communications in connection with his operation of an online eyewear business, DecorMyEyes.com. *See* 10 Cr. 1266 (RJS) (S.D.N.Y.) BORKER pled guilty to those crimes on or about May 12, 2011. BORKER was sentenced to 48 months' imprisonment and three years of supervised release.

b. On or about June 21, 2017, BORKER was charged with mail and wire fraud and conspiracy to commit mail and wire fraud, in connection with his operation of an online eyewear business, OpticsFast.com. *See* 17 Cr. 391 (PGG) (S.D.N.Y.). BORKER pled guilty to those crimes on or about March 20, 2018. BORKER was sentenced to 24 months' imprisonment and three years of supervised release.[4]

c. Following a period of incarceration at a Bureau of Prisons facility, BORKER was placed in a Residential Reentry

---

[4] On or about February 25, 2018, prior to pleading guilty to the in 17 Cr. 391 (PGG), BORKER was found to have violated his supervised release in connection with his operation of OpticsFast.com, and was sentenced to two years' imprisonment for that violation.

10

Center in or around June 2020.  In or around September 2020, BORKER was placed on home confinement.  BORKER was released from federal custody in or about November 2020.  BORKER remains on supervised release by the United States Probation Office.

24.    Based on my review of customer complaints maintained by a federal agency, I understand that individuals had filed complaints with respect to EyeglassesDepot.com as early as in or about May 2016.  These complaints indicated, among other things, that after purchasing eyeglasses on EyeglassesDepot.com, the customer began receiving communications from OpticsFast.com.  Therefore, I understand that VITALY BORKER, the defendant, may have been operating EyeglassesDepot.com prior to June 2020, including during the time that he was operating OpticsFast.com.  I also understand, based on my review of those customer complaints, that the volume and frequency of complaints about EyeglassesDepot.com increased significantly after BORKER entered the Residential Reentry Center in June 2020.

25.    Based on my review of the website EyeglassesDepot.com and the website OpticsFast.com, I know that EyeglassesDepot.com bears remarkable similarities to OpticsFast.com.  EyeglassesDepot.com uses the same layout and graphics as OpticsFast.com, and nearly verbatim language in describing its services.  Below on the left is a screenshot of EyeglassesDepot.com as of February 16, 2022.  Below on the right is a screenshot of OpticsFast.com on the same date.  Other than changing the names of the websites and the order in which the website's respective services are portrayed on the homepage (i.e., "Expert Eyewear Repair Services," "Designer Sunglasses," "Designer Eyeglasses," and "Prescriptions in Eyeglasses and Sunglasses"), the language used to describe each website's services are substantively identical.



    26.  In the course of this investigation, I have learned the following additional information suggesting common ownership and control of EyeglassesDepot.com, OpticsFast.com, and DecorMyEyes.com:

        a.   Based on my communications with another Postal Inspector, I know that that Postal Inspector, while reviewing OpticsFast.com in or about June 2021, placed an item in a "shopping cart" for purchase.  Prior to purchasing the item from OpticsFast.com, that Postal Inspector visited EyeglassesDepot.com.  Upon visiting EyeglassesDepot.com, the Postal Inspector noticed that the item placed in the shopping cart at OpticsFast.com also appeared in the shopping cart at EyeglassesDepot.com, indicating an affiliation between the two websites.

12

b.   Based on my review of email "header" information of an email sent to a prospective customer by the "EyeglassesDepot Sales Team" from an email account at the domain @eyeglassesdepot.com, I understand that the email address for the EyeglassesDepot Sales Team is associated with the same email domain as email accounts held for @decormyeyes.com – i.e., the website that was the subject of the criminal charges brought against VITALY BORKER, the defendant, in 2010.

c.   Based on my review of records from an internet services hosting provider, I understand that the email accounts for EyeglassesDepot.com, OpticsFast.com, and DecorMyEyes.com are all associated with the same user account held at the internet services hosting provider.

*Borker Assumes the Identities of Individual-1 and Individual-2 to Operate EyeglassesDepot.com*

27.  Based on my communications with the United States Probation Officer responsible for supervising VITALY BORKER, the defendant, during his term of supervised release (the "Probation Officer"), I know that BORKER has claimed to have sold his interest in EyeglassesDepot.com, DecorMyEyes.com, and OpticsFast.com to Corporation-1, and has claimed that Individual-1 is the President of Corporation-1.  Specifically, I have reviewed a purported "Sales Agreement" between BORKER and Corporation-1 that BORKER provided to the Probation Officer.  The Sales Agreement, which is dated November 4, 2020, states that BORKER is selling his "right, title, and interest" to six particular websites, including EyeglassesDepot.com, DecorMyEyes.com, and OpticsFast.com, to Corporation-1.  The Sales Agreement further indicates that Individual-1 is the President of Corporation-1, and purports to be signed by BORKER and Individual-1.

28.  While other individuals, including Individual-1, may be affiliated with and/or employed by EyeglassesDepot.com, as detailed below, VITALY BORKER, the defendant, continues to operate and manage the company.

29.  Based on my review of records from Online Marketplace-1, including as noted *supra* paragraphs 14.c, 14.g, 15.c, and 21.a, the Borker IP has frequently been accessed to place orders on the Individual-2 Account at Online Marketplace-1.

30.  In addition, based on my review of the Search Warrant Returns, I know that VITALY BORKER, the defendant, uses at least

13

three email Accounts ("Email Account-1," "Email Account-2," and "Email Account-3"), to operate EyeglassesDepot.com. Specifically, I know the following with respect to Email Account-1, Email Account-2, and Email Account-3:

      a. Email Account-1 is held in the name of Individual-1. It is the email account, as described *supra* paragraph 12, which receives an email when a customer places an order on EyeglassesDepot.com. It is also the email account used to contact EyeglassesDepot.com by certain third-party businesses that provide services to EyeglassesDepot.com, including Payment Processor-1 and a financial institution ("Bank-1"). Email Account-1 was frequently accessed from the Borker IP between at least on or about October 28, 2020 through at least on or about July 4, 2021. The "recovery" phone number for Email Account-1, that is, the phone number which can be used to access Email Account-1 should the account holder lose access to the account, is a phone number known to belong to BORKER (the "Borker Phone Number").[5] In addition, as detailed *infra* paragraphs 31 and 32, BORKER accesses and operates the accounts at Payment Processor-1 and Bank-1 for which Email Account-1 is the contact email address on file.

      b. Email Account-2 is the email address associated with the Phone Number, that is, the Internet-based phone number that is used to communicate with customers of EyeglassesDepot.com by text message and telephone.[6] Email Account-2 was frequently accessed from the Borker IP between at least on or about November 15, 2020 through at least on or about July 3, 2021. The recovery phone number for Email Account-2 is the Borker Phone Number. The recovery email account for Email Account-2 is Email Account-3.

      c. Email Account-3 is the email address used to operate the Individual-2 Account at Online Marketplace-1. Email Account-3 was frequently accessed from the Borker IP between at

---

[5] I know this phone number belongs to BORKER because, among other things, it is the recovery phone number for the email address that the United States Probation Office has on file as belonging to BORKER ("Email Address-4").

[6] The Phone Number is an Internet-based number which is offered as an optional additional service by the email service provider that hosts Email Account-1. That is to say, the Phone Number and Email Account-1 are both assigned to the same account at the email service provider.

14

least on or about October 15, 2020 through at least on or about July 3, 2021. In addition, as discussed *supra* paragraph 29, the Borker IP is commonly used to access Online Marketplace-1 to purchase eyewear that is sent to customers of EyeglassesDepot.com.[7] The recovery phone number for Email Account-3 is the Borker Phone Number.

31. Based on my review of the Search Warrant Returns and records from Payment Processor-1, I have learned the following:

    a. On or about July 30, 2020, that is, shortly after the time that VITALY BORKER, the defendant, was transferred to a Residential Reentry Center, an account was opened with Payment Processor-1 on behalf of Corporation-1. Payment Processor-1 is used by EyeglassesDepot.com to process payments from customers.[8]

    b. Individual-1 was identified in the account opening materials as the contact person for Corporation-1's account with Payment Processor-1. At or around the time of account opening, Individual-1's driver's license was submitted to Payment Processor-1. Email Account-1 was the email address provided to Payment Processor-1 in connection with this account.

    c. While Individual-1's identity was used to create the account for Corporation-1 at Payment Processor-1, BORKER used the account in order to conduct business for EyeglassesDepot.com. Specifically, account records reflect that the Corporation-1 account at Payment Processor-1 was frequently

---

[7] While Individual-2 is a family member of BORKER's, I know from my conversations with the Probation Officer that Individual-2 does not reside with BORKER. Furthermore, based on publicly available information, Individual-2, who is over 80 years old, does not appear to be involved in the eyeglasses business and/or any other e-commerce business which would support the volume of activity associated with the Individual-2 Account at Online Marketplace-1.

[8] The account opening documents at Payment Processor-1 for Corporation-1 include a reference to another eyewear-related website which is among the websites purportedly sold by BORKER to Corporation-1 pursuant to the Sales Agreement. Therefore, the Corporation-1 account at Payment Processor-1 may also be used in connection with other eyewear websites operated by BORKER in addition to EyeglassesDepot.com

accessed from the Borker IP between at least in or about September 2020 through at least in or about September 2021.

        d.    In addition, in connection with maintaining its account at Payment Processor-1, Corporation-1 submitted proof of its inventory and business to Payment Processor-1. The proof submitted by Corporation-1 to Payment Processor-1 included, among other things, photographs of boxes of eyeglasses. I have compared the photographs submitted by Corporation-1 to Payment Processor-1 with photographs of BORKER's residence taken in connection with a search warrant executed at the time of a previous arrest. I have also shown the photographs submitted by Corporation-1 to Payment Processor-1 to Postal Inspectors who were present at the time of BORKER's previous arrests at his residence. Based on my personal comparison of the photographs and my discussions with other Postal Inspectors, I know that the photographs of eyewear inventory submitted by Corporation-1 to Payment Processor-1 were taken from inside of BORKER's residence.

    32.    Based on my review of records from Bank-1, I know the following:

        a.    In or about March 2019, Corporation-1 opened an account at Bank-1. Individual-1 is listed on the signature card for the Corporation-1 account at Bank-1 as Corporation-1's President.[9] VITALY BORKER, the defendant, is not referenced in the account records as an authorized user of the account or as otherwise affiliated with the account.

        b.    The account held by Corporation-1 at Bank-1 is regularly used in furtherance of the business of EyeglassesDepot.com. For example, the account held by Corporation-1 at Bank-1 regularly receives transfers of funds from the account held by Corporation-1 at Payment Processor-1. In other words, funds derived from payments made by customers of EyeglassesDepot.com that are processed by Payment Processor-1 are eventually transferred to the account held by Corporation-1 at Bank-1.

---

[9] The signature card was signed in March 2019. Based on my review of BOP records, BORKER was in federal custody at the time. Therefore, BORKER does not appear to have signed the signature card at the time of opening the account.

16

c. Despite the account being held in the name of Corporation-1 and Individual-1, the account is frequently accessed by the Borker IP (and another IP address associated with BORKER's residence), including on over 2,000 occasions between on or about December 26, 2019 through on or about June 21, 2021.[10]

d. In addition, BORKER has physically appeared at a branch of Bank-1 in Brooklyn, New York in order to deposit funds into the account held in the name of Corporation-1 at Bank-1. Below at top left is an image of BORKER taken in January 2021 and obtained from the Department of Motor Vehicles. Below at top right is an image of BORKER accessing the account held in the name of Corporation-1 at Bank-1 on April 6, 2021. Immediately below those photographs are images of BORKER accessing the account on May 2, and May 4, 2021.





---

[10] As noted above, BORKER was in federal custody in December 2019.

33. Therefore, I understand that VITALY BORKER, the defendant, uses Individual-1's identity to conduct business on behalf of EyeglassesDepot.com.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of VITALY BORKER, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Daniel J. Gabel with permission
_____
Postal Inspector Daniel J. Gabel
United States Postal Inspection Service

Sworn to me through the transmission of this
Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this <u>16</u>th day of February, 2022

_____
JAMES L. COTT
United States Magistrate Judge